IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PEGGY SWEENEY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:04-cv-449 |
| | § | |
| AETNA US HEALTHCARE, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court are the following:

1. Defendant's Motion for Summary Judgment After Reconsideration of Plaintiff's Claim (de # 76);

2. Plaintiff's Motion for Summary Judgment (de # 77); and

3. Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (de # 78).

Having considered the Motions of the parties and all briefing responsive thereto, the court is of the opinion that the Plaintiff's Motion should be DENIED, and the Defendant's Motion should be GRANTED.

**I. BACKGROUND**

This dispute arises out of the denial of a claim for long term disability ("LTD") benefits. Peggy Sweeney initially filed her claim with Aetna Life Insurance Company on January 3, 2002. (Pl.'s Mot. 4.) Sweeney began working for Candle Corporation in January of 1986 "as a System Engineer Sales." (*Id*. at 3.) Aetna issued a Group Life and Accident and Health Insurance Policy to Candle. (Def.'s Mot. 2.) As a part of the Policy, Aetna is responsible for funding meritorious

LTD benefits claims. (*Id*.) Aetna is also vested with "discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits[.]" (*Id*. at 3.) A disability is covered under the Policy's LTD component under either of the following conditions:

> During the period which ends right after the first 24 months benefits are payable in a period of total disability:
> [the claimant is] not able, solely because of injury or disease, to perform the material duties of [the claimant's] own occupation[, or]
> Thereafter, during such period of disability:
> [the claimant is] not able, solely because of injury or disease, to work at any reasonable occupation.

(*Id*.) The Policy requires that a claimant submit "proof of the nature and extent of the loss," and imposes a 90-day waiting period after the approval of LTD benefits before the claimant begins to receive them. (*Id*.)

Sweeney's last day at work with Candle was September 21, 2001. (*Id*. at 4.) She claimed to be disabled due to a condition known as fibromyalgia. (*Id*.) Fibromyalgia is a rheumatic disorder characterized by general pain, fatigue, sleeplessness, stiffness, and tender spots on the body. *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 915 (2003) (opinion of Posner, J.). The diagnosis of fibromyalgia is made by the consideration of these subjective symptoms in addition to the palpation of eighteen fixed spots on the body. If eleven or more of the spots are particularly sensitive to the touch, the patient is generally deemed to have fibromyalgia. *Id*. A minority of fibromyalgia patients are disabled to the extent that gainful employment is not feasible. *Id*.

Sweeney submitted her first claim in January of 2002, and that claim was denied on March 25, 2002, because Sweeney was not "totally disabled from performing the material duties of her own occupation." (Def.'s Mot. 4.) In its denial letter, Aetna informed Sweeney that her file lacked

objective medical evidence indicating that her impairment precluded her from performing her regular duties. (*Id.*) Sweeney appealed the decision, but her appeal was denied on December 27, 2002 because her file still lacked objective medical evidence connecting her disability to the duties of her occupation. (*Id.* at 4-5.) Sweeney then filed a lawsuit against Aetna in this court in December of 2004. (*Id.* at 5.) Because Sweeney sought to introduce new evidence and arguments, the court remanded the matter to Aetna for further consideration. (*Id.*); *see* Order Granting Defendant's Motion to Remand and Stay (de # 59).

On reconsideration, Aetna referred Sweeney's file to the University Disability Consortium ("UDC"). (Def.'s Mot. 6.) The matter was forwarded to Dr. Noreen Ferrante. Aetna removed all of the references in the file to the work of Dr. Hopkins, the doctor who reviewed Sweeney's file in the first instance and recommended that her claim be denied. (*Id.*) Ferrante reviewed the following information in Sweeney's file.

In March of 2000, Sweeney went to California to visit Dr. Paul St. Armand at the Fibromyalgia Treatment Center. (*Id.* at 6-7.) Based on his consultation with Sweeney, Dr. St. Armand believed her to suffer from fibromyalgia, and he prescribed a medicinal regimen. (*Id.* at 7.) Sweeney's condition improved through March of 2001. However, when she saw Dr. St. Armand in September of 2001, she reported aching, exhaustion, and difficulties concentrating. (*Id.* at 8.) Dr. St. Armand recommended, without explanation, that Sweeney take three months of disability. (*Id.*) He also referred Sweeney to Dr. Zashin, a rheumatologist in Dallas. (*Id.*) Dr. Zashin noted the same subjective symptoms reported by Sweeney, but stated that she had normal strength, reflexes, and sensation. (*Id.*)

On December 11, 2001, Dr. Zashin filled out an Attending Physician's Statement ("APS")

regarding Sweeney's forthcoming LTD claim.  (*Id*. at 9.)  The APS indicated that Sweeney was capable of doing a couple of hours of light activity every day and that she was unable to lift more than twenty pounds.  (*Id*. at 10.)  In the section of the form pertaining to physical impairments, Dr. Zashin remarked "N/A."  He also indicated that the target date for Sweeney's return to work was unclear.  (*Id*.)

On February 19, 2002, Sweeney underwent a functional capacity evaluation ("FCE").  (*Id*. at 11.)  The FCE was designed to simulate Sweeney's capability of performing a series of manual and physical tasks such as crouching, standing, walking, lifting, and handling so as to gauge her ability to work.  The examiner remarked that Sweeney's effort was "conditionally reliable," as 33 of 41 consistency measures were within the expected limits.  (*Id*.)  The examiner also reported that Sweeney self-limited her efforts due to reported pain and fatigue that were not substantiated by objective measures such as increased heart rate.  (*Id*.)  The FCE did reveal that Sweeney was able to perform many of the tasks either occasionally, frequently, or constantly.  It also showed that her movement patterns were normal.

In September of 2002, Dr. St. Armand sent a letter to Aetna detailing the factors that led to his conclusion that Sweeney suffered from fibromyalgia.  (*Id*. at 12.)  He also commented on the subjective reports of pain given by Sweeney, stated that she seemed to be improving.  Notably, he added that he could "give no affirmative or negative answer regarding her work capabilities."  (*Id*.) On March 4, 2003, Dr. John Harney wrote a letter to Aetna stating that he was Sweeney's neurologist and, without explanation, said that she was "disabled from employment."  (*Id*. at 13.)  Dr. Harney sent another letter in September of 2004 stating that, with continued treatment, Sweeney would be able to return to full-time work.  At no point did Aetna have access to Dr. Harney's files or notes.

(*Id*.)

Dr. Ferrante, in reviewing the record summarized above, accepted that Sweeney did, in fact, suffer from fibromyalgia. (*Id*.) Dr. Ferrante's report concludes that nowhere in Sweeney's file is her daily activity (including that at work) discussed, making inappropriate any determinations about Sweeney's ability to work based solely on her disability. (*Id*. at 14.) Dr. Ferrante did note that the mere diagnosis of fibromyalgia did warrant some restrictions on the physical movements required of Sweeney at work. However, these restrictions "are still compatible with sedentary to light work." (Administrative R. REV1909.) Dr. Ferrante then summarized her review of medical literature provided by Sweeney, concluding that it was no more illustrative than Sweeney's medical records. (Def.'s Mot. 15-16.)

Aetna then asked Dr. Ferrante to answer additional inquiries. Specifically, Aetna asked Dr. Ferrante to consider additional medical literature, consider the side effects of Sweeney's medicinal regimen, and to elaborate on the utility of the findings of the FCE. (*Id*. at 16-17.) Dr. Ferrante first stated that the additional literature was not helpful. (Administrative R. REV1913.) She also concluded that the FCE was not particularly useful, especially in light of the deficiencies discussed above. (*Id*. at REV1913-REV1914.) Finally, Dr. Ferrante commented on the potential side effects of the medicines Sweeney was taking for her condition, concluding that there was no evidence in the record that Sweeney suffered any side effects. (Administrative R. REV1914.) After reviewing Dr. Ferrante's analysis and accepting Sweeney's contention that her job was considered light duty rather than sedentary,[1] Aetna denied Sweeney's review on remand from the court. (Def.'s Mot. 18-19.)

---

[1] In her initial LTD benefits claim, Sweeney accepted Aetna's classification of her job as sedentary. Only upon her initial filing of this lawsuit did Sweeney argue that the duties required of her by Candle made her job a light-duty vocation. Aetna's investigation found the distinction

As with its prior claim denials, Aetna based its decision on the lack of evidence that Sweeney's condition prevented her from performing any of the material duties of her occupation. (*Id.* at 19.)

## II.  LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the

---

to be immaterial.

movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. DISCUSSION AND ANALYSIS

Sweeney's claim arises out of the Employee Retirement Income Security Act of 1974 ("ERISA"), which authorizes a plaintiff to bring a private right of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B) (2006). Where, as here, a benefit plan gives the administrator discretionary authority to adjudge a claimant's eligibility for the receipt of benefits, the district courts review the determination under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc). A claims administrator commits an abuse of discretion only if it acts "arbitrarily or capriciously." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). So long as the decision is supported by substantial evidence in the record, an administrator's decision will be neither arbitrary nor capricious. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). Otherwise stated, the administrator's decision need only "fall somewhere on a continuum of reasonableness–even if on the low end." *Vega*, 188 F.3d at 297.

In the circumstance where the claims administrator is conflicted because of its dual role as gatekeeper and benefactor, its determination is to be reviewed under a less deferential standard. *Corry v. Liberty Life Assurance Co.*, 499 F.3d 389, 398 (5th Cir. 2007) (citing *Vega*, 188 F.3d at 295-

97). However, because Sweeney has presented no further evidence of a conflict of interest (aside from unsubstantiated and conclusory statements), the court will accord Aetna's decision with "only a modicum less deference" than it otherwise would. *Id*. (quoting *Vega*, 188 F.3d at 301). Finally, the court's review is confined to those facts contained in the administrative record submitted by the parties. *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001).

It is clear from the record that Aetna's decision to deny LTD benefits to Sweeney was substantiated by substantial evidence. Both Sweeney's failure to proffer *objective* medical evidence that her symptoms inhibited her from working at Candle Corporation and Dr. Ferrante's review concluding that Sweeney was not disabled under the Policy constitute substantial evidence. In *Corry*, the court was confronted with a plaintiff who suffered from fibromyalgia. *Corry*, 499 F.3d at 391. Though the defendant initially approved Corry for disability benefits, those benefits were later terminated. *Id*. at 395. The defendant relied on the reports of multiple doctors, each of whom were unable to find objective medical documentation that Corry's condition prevented her from returning to work. *Id*. at 394-396. The court reversed the district court's decision in favor of Corry, noting that the conclusions of the doctors, based in large part on the lack of objective medical evidence, "indisputabl[y]" constituted substantial evidence to support the termination of disability benefits. *Id*. at 402. The court wrapped up its analysis by stating that the law is only concerned with the existence of substantial evidence to support a denial of benefits, "not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Id*. (quoting *Ellis*, 394 F.3d at 273).

The circumstances in *Corry* are, in all material respects, identical to those in the instant case. Sweeney submitted her claim to Aetna for consideration. Finding no objective medical evidence to

support Sweeney's contention that her disability *prevented her from working*, or in the language of the Policy, from "perform[ing] the material duties of [her] own occupation," Aetna denied her claim for LTD benefits. Sweeney has been given two full and fair reviews of the initial denial, and at no stage in the proceedings did she submit objective evidence that she was unable to perform the material duties of her occupation. Stated in the appropriate legal parlance, she has been unable to produce that amount of evidence that would permit this court to conclude that Aetna has committed an abuse of discretion in denying her claim.

This decision is consistent with the rules emerging out of this *sui generis* area of the law. In *Karvelis v. Reliance Standard Life Ins.*, the court collected and analyzed an impressive array of cases dealing with the tension between the nature of fibromyalgia and related conditions and the legitimate interest of claims administrators in verifying that a claimant meets a given policy's definition of disability before granting a claim. 2005 WL 1801943 *12-15 (S.D. Tex. 2005). The court concluded its analysis stating "[i]f the denial of [a plaintiff]'s claim is based on the lack of substantial objective medical evidence of symptoms *or their affect* [sic] *on her ability to work*...that would be consistent with opinions upholding insurers' denials of long-term disability benefits." *Id*. at *15 (emphasis added). Aetna did not deny Sweeney's claim because she could not produce objective medical evidence that she suffered from fibromyalgia; Dr. Ferrante's review accepted that diagnosis. Rather, the claim was denied because Aetna was not provided with objective evidence that demonstrated Sweeney's condition prevented her from performing the material duties of her occupation. *Id.*; *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend

themselves to objective analysis.").

Sweeney advances two arguments for the proposition that Aetna's decision constituted an abuse of discretion. Sweeney first argues that Dr. Ferrante's report was biased. (Pl.'s Mot. 10.) Sweeney has offered no evidence on this point except to say that doctors have an incentive to favor the claims administrators that hire them. Where, as here, the reviewing doctor is an independent consultant, "this argument lacks merit." *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602 n.14 (5th Cir. 1994).

Sweeney also argues that Aetna overlooked and mischaracterized certain evidence in her claim file. (Pl.'s Mot. 11-15.) The court finds Sweeney's arguments to be nothing more than expressions of disagreement with the decision arrived at by Aetna. Sweeney argues, for example, that the FCE was not reasonably interpreted by Dr. Ferrante. (*Id.* at 11.) However, Dr. Ferrante discussed the FCE at length in both her initial report and the addendum thereto. Her conclusion that it did not support Sweeney's claim of total disability was neither arbitrary nor capricious. Plan administrators are entitled to rely on the "opinion of a consulting physician whose opinion conflicts with the claimant's treating physician." *Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007). This discretion necessarily encompasses Aetna's right to rely on Dr. Ferrante's interpretation of the records in Sweeney's claim file. Dr. Ferrante's reading of the FCE was reasonable and "not in plain conflict with medical records." *Id.* at 250.

Sweeney's additional argument that Aetna ignored the effects of her medication on her ability to work is misguided. (Pl.'s Mot. 13-15.) Aetna explicitly asked Dr. Ferrante to consider these effects when it asked her to augment her initial report. (Def.'s Mot. 16-17.) The record was reviewed in light of this inquiry, and Dr. Ferrante was unable to find any evidence that Sweeney

suffered any debilitating side effects. (*Id*.) Aetna specifically mentioned this conclusion in its denial letter of January 29, 2007. (*Id*. at 19.)

## IV. CONCLUSION

Based on the foregoing, the court is of the opinion that the Plaintiff's Motion for Summary Judgment should be, and hereby is, DENIED. The court is also of the opinion that the Defendant's Motion for Summary Judgment should be, and hereby is, GRANTED. Any other pending motions in this matter are hereby DENIED AS MOOT.

IT IS SO ORDERED.

**SIGNED this the 17th day of December, 2007.**

*[signature: Richard A. Schell]*

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE